Filed 7/25/23  P. v. Parra  CA2/6
Opinion following transfer from Supreme Court

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B309749 |
| | (Super. Ct. No. NA003695) |
| Plaintiff and Respondent, | (Los Angeles County) |
| v. | |
| | OPINION ON TRANSFER |
| JOEL QUINTANA PARRA, | FROM SUPREME COURT |
| Defendant and Appellant. | |

In August 2021, we filed our opinion affirming the postjudgment order denying Joel Quintana Parra's[1] motion to vacate his conviction pursuant to Penal Code section 1473.7. (*People v. Parra* (Aug. 6, 2021, B309749 [nonpub. opn.].) Quintana contends his guilty plea to felony forgery is invalid due to prejudicial error impairing his ability to understand the immigration consequences of his plea.  In October 2021, the

---

[1] The record contains several variations of appellant's name, including Joel Parra Quintana, Joel Para Quintana, Joel Parra, and Joel Quintana-Parra.

California Supreme Court granted review and in May 2023 transferred the matter back to us "with directions to vacate [our] decision and reconsider the cause in light of *People v. Espinoza* (2023) 14 Cal.5th 311." We do so, and upon reconsideration, affirm.

FACTUAL AND PROCEDURAL BACKGROUND

*Guilty plea and sentence*

In 1990, Quintana was charged with felony counts of receiving stolen property (count 1, Pen. Code, § 496, former subd. 1) and forgery of a vehicle certificate of title (count 2, Pen. Code, § 470). Quintana pleaded guilty to forgery in exchange for felony probation and one year in county jail. The trial court advised him: "If by some chance you are not a citizen of this country, this conviction could result in your being deported, your being denied naturalization, your being denied the right to come back into the country at a later time." Quintana said he understood. The minute order states, "Defendant advised of possible effects of plea on any alien/citizenship/probation/parole status."

The court placed Quintana on probation with terms including 365 days in the county jail, with credit for 101 actual days served and 50 days conduct credit. On motion of the People, the court dismissed count 1.

In 1995, the court found Quintana in violation of probation and sentenced him to 16 months in state prison, with credit for 335 actual days served and 165 days conduct credit. He received a concurrent prison sentence of 16 months for a 1995 felony conviction of petty theft with a prior (Pen. Code, § 666). In 2016, the section 666 conviction was reduced to a misdemeanor. (Pen. Code, § 1170.18, subd. (g).)

2

*Immigration proceedings, motion to vacate, and the trial court's ruling*

In 2012, Quintana was detained by Immigration and Customs Enforcement (ICE).  ICE sought his removal from the country based on a 2010 conviction of possession of a firearm by a felon.  The basis for removal was then amended to substitute conviction of forgery with a loss to the victim of $10,000 or more. ICE again substituted its basis for seeking removal to a 2002 conviction for causing corporal injury to a spouse.  Quintana states that this is the offense for which he is facing removal.

Quintana sought discretionary relief of cancellation of removal.  (8 U.S.C. § 1229b(a), Immigration and Nationality Act (INA) § 240A(a).)  The immigration judge determined that Quintana was not eligible for relief because his conviction for "an offense relating to . . . forgery. . . for which the term of imprisonment is at least one year" was an "aggravated felony."

In 2020, Quintana filed a motion to vacate the forgery conviction pursuant to Penal Code section 1473.7.  He stated that a 1988 theft conviction and the forgery conviction were crimes of moral turpitude that subjected him to deportation.  Because the forgery sentence was a year or more, it was an aggravated felony that subjected Quintana to mandatory deportation and permanent exclusion from the United States.  It also made him ineligible to apply for discretionary cancellation of removal to remain in the country.  The former public defender who represented Quintana during the guilty plea did not remember the case.

At the hearing on the motion to vacate his conviction, Quintana testified he had been arrested several times as a juvenile and adult, but had no contact with ICE until 2012.

3

When he pleaded guilty, his attorney told him "[o]f the deportation or something. Something like that." His attorney told him the immigration consequences "would be deportation and all that. But it didn't apply to me because I was legal. I was not illegal." When asked if he drew that conclusion or his attorney told him that, Quintana responded, "I guess we both came to the conclusion."

His attorney never told him forgery was a moral turpitude crime that would result in deportation. When asked if receiving that advice would have affected his decision to plead guilty, Quintana said he would still think not because he was "legal."

Quintana pleaded guilty because "they would have found me guilty anyways" and "they already had the evidence of stuff against me." He "took the deal" because with his custody credits, he was "basically going to get out of custody."

The trial court denied the motion to vacate. The court found that Quintana's attorney told him he "could be deported. That this was a deportable offense." The court found that counsel and the trial judge "did what [they were] supposed to do" by advising that deportation was possible. But Quintana "just didn't think it applied" to him. The court did not "think [Quintana] would have done anything differently." He made a "rational decision" to plead guilty to one of the two counts for time served.

*Prior appellate proceedings*

We previously affirmed the trial court's postjudgment order denying Quintana's motion to vacate his guilty plea to felony forgery pursuant to Penal Code section 1473.7. According substantial weight to the trial court's credibility findings and exercising our independent judgment to determine whether the facts satisfy the rule of law (*People v. Vivar* (2021) 11 Cal.5th

4

510, 524-527), we concluded Quintana established that the forgery conviction "is currently causing or has the potential to cause removal or the denial of an application for an immigration benefit." (Pen. Code, § 1473.7, subd. (e)(1).) However, we concluded that Quintana was adequately advised that his guilty plea would result in deportation. We also concluded that Quintana had not shown prejudicial error because he did not corroborate his claim that he would have gone to trial if he understood his plea would adversely impact his legal permanent resident status.

## DISCUSSION

In *People v. Espinoza* (2023) 14 Cal.5th 311 (*Espinoza*), a noncitizen defendant sought to vacate his no contest plea because his lawyer did not advise him that pleading to the charges would put him in danger of losing his permanent resident status, being deported, and being barred from reentry into the United States. Had he known that his plea would have adverse immigration consequences notwithstanding his legal permanent resident status, defendant claimed he "would instead have taken the case to trial or agreed to a longer sentence in exchange for an immigration-safe plea." (*Id.* at p. 318.) The issue was whether the defendant had established prejudicial error to vacate his plea by sufficiently corroborating his claim that "immigration consequences were a paramount concern." (*Id.* at p. 317.)

Our Supreme Court in *Espinoza* concluded the noncitizen defendant was prejudiced by his failure to understand the immigration consequences of his no contest plea on his legal permanent resident status. " 'Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the

5

defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible.' [Citations.] Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at pp. 320-321.)

This case is similar to *Espinoza* in several respects. Both defendants came to the United States from Mexico as children. Both had strong family ties in the United States and lengthy work histories here. Both were advised of the immigration consequences but believed they did not apply to them because they were lawful permanent residents. Both claimed their attorneys said or implied they would not be deported. Both claimed they would not have pleaded guilty or no contest if they had known the immigration consequences but would have gone to trial or sought an immigration-safe plea. (*Espinoza, supra*, 14 Cal.5th at pp. 317-319.)

While "a defendant's deep and long-standing ties to the United States are among the totality of circumstances that can support an inference that immigration consequences were of paramount concern" (*Espinoza*, *supra*, 14 Cal.5th at p. 323), here there are other circumstances that weigh against a finding of prejudicial error. "Another consideration is whether alternative, immigration-safe dispositions were available at the time of the defendant's plea. Factors relevant to this inquiry include the defendant's criminal record, the strength of the prosecution's case, the seriousness of the charges or whether the crimes

6

involved sophistication, the district attorney's charging policies with respect to immigration consequences, and the existence of comparable offenses without immigration consequences." (*Ibid*.)

Lack of criminal record is relevant to whether "the prosecutor might have been willing to offer an alternative plea without immigration consequences." (*Espinoza, supra*, 14 Cal.5th at p. 324.) Espinoza had no prior criminal record. (*Ibid*.) He also "presented evidence from an immigration attorney that there were alternatives the prosecution could have offered that would not have resulted in mandatory deportation." (*Ibid*.) Thus, "Espinoza's lack of a criminal record, combined with the declaration of the immigration attorney, support his assertion that he had reason to expect or hope for a plea bargain without immigration consequences. This enhances the 'credibility of [the] defendant's claim' that he 'would have rejected the plea bargain' had he been properly advised." (*Ibid*.)

On the other hand, Quintana had a significant prior record at the time of his guilty plea. Quintana presented no evidence regarding the availability of an immigration-safe alternative bargain. (Cf. *People v. Curiel* (2023) 92 Cal.App.5th 1160, 1179-1180 [defendant detailed alternative pleas without same adverse immigration consequences].) Quintana's counsel stated in a declaration that Quintana could have served the same amount of custody time if he were sentenced to 364 days with a waiver of accrued and future custody credits. But he has not shown how that would have been a more favorable disposition for immigration purposes because forgery resulting in a year or more of custody was not an aggravated felony at that time.

Forgery with a possible term of imprisonment of five years or more became an aggravated felony on April 24, 1996.

(8 U.S.C. § 1101(a)(43)(R), INA § 101(a)(43)(R), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) § 440(e)(8).) Effective September 30, 1996, the definition of aggravated felony was amended to include forgery for which a sentence of one year or more was imposed. (8 U.S.C. § 1101(a)(43)(R), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRAIRA) § 321(a)(10).) Quintana concedes the "365 [day] rule" was not in effect at the time of the 1990 guilty plea. Nor was it in effect when the court revoked Quintana's probation and sentenced him to 16 months in prison. The amendment is retroactive—it applies "regardless of whether the conviction was entered before, on, or after [September 30, 1996]." (8 U.S.C. § 1101(a)(43), final par., as amended by IIRAIRA § 321(b) & (c); *Aragon-Ayon v. Immigration and Naturalization Service* (9th Cir. 2000) 206 F.3d 847 [amendment is retroactive]; see *Vartelas v. Holder* (2012) 566 U.S. 257, 267 [recognizing retroactive effect].)

Nor did Quintana offer any evidence regarding the district attorney's charging policies in 1990 with respect to immigration consequences.

Quintana also testified that he pleaded guilty during jury selection because "they would have found me guilty anyways" and "they already had the evidence of stuff against me." He "took the deal" because with his custody credits, he was "basically going to get out of custody." Thus, unlike *Espinoza*, there is insufficient objective evidence to corroborate Quintana's assertion that he would have rejected the plea bargain, continued with his trial, or sought an immigration-safe plea. (*Espinoza*, *supra*, 14 Cal.5th at p. 318.)

Quintana has deep and long-lasting ties to the United

States.  He is not only a financial provider for his family, but a caregiver to his daughter and spouse.  The potential immigration consequences of Quintana's conviction to him and his family are significant.  "The immigration consequences of criminal convictions have a particularly strong impact in California.  One out of every four persons living in the state is foreign-born.  One out of every two children lives in a household headed by at least one foreign-born person."  (Pen. Code, § 1016.2, subd. (g).)  "Whether they become citizens or not, these immigrants' ties to our country are evident not only in their work and schooling, but in how they've formed attachments and families of their own.  In contrast, what ties they once had to their country of birth—from which they may lack even memories—often slip away.  So when long-standing noncitizen residents of this country are accused of committing a crime, the most devastating consequence may not be a prison sentence, but their removal and exclusion from the United States."  (*People v. Vivar*, *supra*, 11 Cal.5th at p. 516.)

But based on "the totality of the circumstances" here, Quintana has not "shown a reasonable probability that he would have rejected the plea and either gone to trial or sought a different, immigration-safe bargain if he had understood the consequences of the plea."  (*Espinoza*, *supra*, 14 Cal.5th at p. 325.)  Nor has he presented " 'evidence that would have caused the defendant to expect or hope a different bargain would or could have been negotiated.' "  (*People v. Vivar*, *supra*, 11 Cal.5th at p. 529, italics omitted.)  The trial court properly denied Quintana's motion to vacate his guilty plea after reviewing the evidence and weighing the credibility of his testimony.  (*Espinoza*, at p. 320 [appellate courts engaging in independent review must give deference to trial court's factual determinations

9

based on witness credibility].)

DISPOSITION

Our original decision filed August 6, 2021, is vacated.  The order denying Quintana's Penal Code section 1473.7 motion to vacate his conviction is affirmed.

<u>NOT TO BE PUBLISHED.</u>

BALTODANO, J.

We concur:

GILBERT, P. J.

YEGAN, J.

Laura L. Laesecke, Judge

Superior Court County of Los Angeles

_____

Andres Bustamante for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Steven D. Matthews, Deputy Attorneys General, for Plaintiff and Respondent.